**UNITED STATES of America,
Plaintiff,**

v.

**PORTLAND LONGSHOREMEN'S BE-
NEVOLENT SOCIETY, LOCAL NO.
861, INTERNATIONAL LONGSHORE-
MEN'S ASSOCIATION, AFL–CIO, et
al., Defendants.**

Civ. A. No. 12–190.

United States District Court,
D. Maine, S. D.
Nov. 27, 1971.

U. S. Atty. Peter Mills, Portland, Me., for plaintiff.

John A. Mitchell, Portland, Me., appeared for I. T. O. Corp. of New England.

TEMPORARY RESTRAINING ORDER

COFFIN, Circuit Judge (sitting by designation).

The United States brings this action against defendant unions and employers,

pursuant to Section 208 of the Labor Management Relations Act of 1947, 29 U.S.C. § 178, seeking to enjoin continuation of a strike in the maritime industry in Maine as part of a general effort to suspend strikes in the Atlantic and Gulf ports. The immediate request is for a temporary restraining order, based on affidavits annexed to the complaint. Hearing was had this date, all parties being represented.

The court first addresses two preliminary matters, both decided adversely to the government in United States v. International Longshoremen's Association, 335 F.Supp. 501 (N.D.Ill., Nov. 3, 1971). The first concerns the type of injury which is prerequisite to injunctive relief. The Labor Management Relations Act states that the district court shall have jurisdiction to enjoin a strike which, "if permitted to occur or to continue, will imperil the national health or safety . . . ." 29 U.S.C. § 178. In the recent case cited above, the court, observing that the government had not there demonstrated an injury to national defense or physical health, held that "we cannot permit an interpretation of § 178 that would include economic injury as a controlling part of the 'national health or safety'." 335 F.Supp. at 507. The short answer is that in the present case, as noted below, the government has specified by affidavit that national defense will be threatened by the continuance of this strike. *See* United States v. National Marine Engineers' Ben. Ass'n, 294 F.2d 385 (2d Cir. 1961).

■ Beyond this, this court does not believe that the phrase "health or safety" was intended to be given a strict, narrow construction. While the Supreme Court in United Steelworkers of America v. United States, 361 U.S. 39, 80 S.Ct. 1, 4 L.Ed.2d 12 (1959), left open the scope of "national health", 361 U.S. at 42, 80 S.Ct. 1, 4 L.Ed.2d 12, Justices Frankfurter and Harlan, in concurring, emphasized that section 178 is "not to be construed narrowly", 361 U.S. at 52, 80 S.Ct. 1, 4 L.Ed.2d 12. Indeed, if health is to be construed in the context

of a shipping strike to encompass only physical health, the provision would be of no practical effect since other modes of transportation could no doubt always be found for necessary medicines or vaccines. In United States v. International Longshoremen's Ass'n, 293 F.Supp. 97 (S.D.N.Y.1968), the court deemed relevant such matters as the effect of the strike on the nation's balance of payments, its effect on food deliveries to major continental ports and to Puerto Rico, and its effect on employment in coastal cities.

Secondly, in considering whether to grant a temporary restraining order under 29 U.S.C. § 178, the court is mindful of the requirement contained in § 178(a) (i) that the strike sought to be enjoined must be "industrywide" in its scope and effects. In *International Longshoremen's Ass'n, supra*, the court felt it relevant to observe that the particular strike it was considering involved only "a minute portion" of the maritime and grain elevator industry. Were the focus to be on the effect of a strike within the jurisdiction of a particular judicial district, this court would, obviously, have to conclude that the effect on the nation of any interference with the sporadic dry cargo shipments to and from Portland and Searsport would be microscopic.

■ But if all courts considering applications for restraining orders under § 178 were to limit their perspective solely to events transpiring within their jurisdiction, the result would be that industrywide strikes imperiling the national health and safety might often be immune from the cooling-off process prescribed by Congress merely because the effects of the strike in each jurisdiction were not substantial enough to provide a predicate for court intervention. The court agrees with the Second Circuit that if a strike is industrywide in scope and otherwise enjoinable, "the injunction may reach all who participated in it, whether their effect was large or small." United States v. National Marine Engineers' Ben. Ass'n, *supra*, 294

F.2d at 393. *Cf. United Steelworkers, supra* at 361 U.S. 43, 80 S.Ct. 1, 4 L.Ed. 2d 12; United States v. Seafarers Inter. Union of No. Amer., Pac. Dist., 204 F. Supp. 686, 690 (N.D.Calif.1962).

██ It appears from the numerous affidavits of appropriate federal officials that a coast-wide strike affecting the Gulf and Atlantic ports is yet in progress, except in ports where recent restraining orders have been issued; that, despite union agreement to handle essential military cargo, shipments of certain commodities essential for support of the armed forces, carried in commercial ships, are jeopardized by the refusal to off-load such ships and make room available for military cargo; that strike conditions have substantially delayed delivery time for military supplies; that the immobilization of much of the U. S. Merchant Marine is jeopardizing United States military commitments in Europe, Southeast Asia, and elsewhere.

It further appears that the strike, if continued, will have a serious impact on the importation of food and other commodities required for United States consumers; that the supply of necessary food items to the Commonwealth of Puerto Rico has been substantially interrupted; that unemployment, wholly apart from that felt in shipping and port services, but causally related to the strike, is substantial; that the flow of agricultural commodities under various governmental programs to combat hunger and malnutrition in many developing countries has been sharply reduced.

It also appears that serious damage is being inflicted on the United States economy as a whole in worsening an already critical balance of payments position, in threatening a long-term loss of markets for agricultural exports and other commodities, in causing serious revenue losses to the shipping industry and others directly or indirectly affected by that industry, including manufacturers, railroads and truckers.

For these reasons the court concludes that a sufficient showing has been made that the present strike affects a substantial part of an entire industry engaged in commerce and, if permitted to continue, will imperil the national health and safety.

It is therefore ordered:

(1) That the defendants and each of them and their officers, agents, servants and employees and all persons in active concert or participation with them be and they hereby are restrained:

   (a) From in any manner continuing, encouraging, ordering, aiding, engaging in or taking any part in any strike or lock-out in the maritime industry of the United States, and

   (b) from in any manner interfering with or affecting the orderly continuance of work in said industry at the same rates of pay, hours of labor, and other terms and conditions of employment in effect immediately prior hereto, subject to such modifications thereof as the defendants may agree upon, and from taking any action which would interfere with this court's jurisdiction in the premises.

(2) That the members of the three local unions of the International Longshoremen's Association, AFL–CIO, named herein, acting in concert, be and they hereby are enjoined from in any manner continuing, encouraging, ordering, aiding, engaging in or taking any part in any strike in the maritime industry of the United States and from in any manner interfering with or affecting the orderly continuance of work in said industry and from taking any action which would interfere with this court's jurisdiction in the premises; provided, however, that nothing in this paragraph shall be construed to require an individual to render labor or services without his consent, nor to make the quitting of his labor or service by an individual employee an illegal act.

(3) That the defendant unions named herein, and their respective appropriate officers, agents, servants and employees, be and they hereby are directed:

(a) To instruct immediately all of their members employed in the maritime industry of the United States to continue their normal employment;

(b) to give notice forthwith to their members of the terms of this order;

(c) to take all action which may be necessary to insure that such instructions are carried out.

(4) That all the defendants herein are directed to engage in free collective bargaining in good faith for the purpose of resolving their disputes and to make every effort to adjust and settle their differences.

(5) This order shall remain in full force and effect until the further order of this court.